Wanda L. Ellert
**Proskauer Rose LLP**
One Newark Center
Newark, NJ 07102
Tel: (973) 274-3285
Fax: (973) 274-3299
wellert@proskauer.com

Richard M. Goldstein *
Lawrence I. Weinstein *
Baldassare Vinti *
**Proskauer Rose LLP**
11 Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
* Admitted *Pro Hac Vice*

*Attorneys for Defendant*
*Church & Dwight Co., Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEPHEN TREWIN and JOSEPH
FARHATT, On Behalf of Themselves and
All Others Similarly Situated,

                    Plaintiff,

   -against-

CHURCH & DWIGHT, INC.

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civ. No. 3:12-CV-01475 (FLW) (DEA)

**Motion Date:** July 16, 2012

*Document Electronically Filed*

## DEFENDANT CHURCH & DWIGHT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 2

    I.    Plaintiffs Have Not Stated a Claim under the NJCFA.......................... 2

        A.    Plaintiffs Have Failed to Allege an Ascertainable Loss ............ 2

        B.    Plaintiffs Have Not Alleged Causation...................................... 5

        C.    The Complaint Fails to Allege Scienter..................................... 7

        D.    Plaintiffs Have Not Alleged Unlawful Conduct Under the NJCFA .......... 8

    II.    Plaintiffs Have Not Stated a Claim for Breach of Implied Warranty ................. 10

    III.    Plaintiffs Concede that Allegations About the Safety of Triclosan are Irrelevant ................................................................................................ 11

    IV.    If the Safety of Triclosan Is at Issue, the Doctrine of Primary Jurisdiction Applies ................................................................................. 12

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Almazan v. 1st 2nd Mort. Co. of N.J.*,
  2011 U.S. Dist. LEXIS 71932 (D.N.J. June 2, 2011) .................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................4

*Barton v. RCI, LLC*,
  2011 WL 3022238 (D.N.J. July 22, 2011) ...........................................................4, 7

*Cafaro v. HMC*,
  2008 U.S. Dist. LEXIS 71740 (D.N.J. Sept. 5, 2008) ...........................................5

*FTC v. Hope Now Modifications, LLC*,
  2011 U.S. Dist. LEXIS 24657 (D.N.J. Mar. 10, 2011) .........................................11

*Hammer v. Vital Pharm., Inc.*,
  2012 U.S. Dist. LEXIS 40632 (D.N.J. Mar. 26, 2012) (Wolfson, J.)..................5, 10

*Henderson v. Volvo Cars of N.A., LLC*,
  2010 WL 2925913 (D.N.J. July 21, 2010).........................................................7, 10

*Kalow & Springnut, LLP v. Commerce Corp.*,
  2009 WL 44748 (D.N.J. Jan. 6, 2009) .................................................................4

*Lee v. Carter-Reed Co.*,
  4 A.3d 561 (N.J. 2010).........................................................................................6

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  2011 WL 4414214 (D.N.J. Sept. 21, 2011) (Wolfson, J.) .............................. passim

*Mann v. TD Bank, N.A.*,
  2010 WL 4226526 (D.N.J. Oct. 20, 2010).............................................................6

*Mason v. Coca-Cola Co.*,
  2010 WL 2674445 (D.N.J. June 30, 2010) .............................................................7

*Nelson v. XACTA 3000 Inc.*,
  2010 WL 1931251 (D.N.J. May 12, 2010).........................................................4, 7

*Pernod Ricard USA, LLC v. Bacardi USA, Inc.*,
  653 F.3d 241 (3d Cir. 2011)...............................................................................9, 10

ii

*Ramirez v. STi Prepaid, LLC*,
    644 F. Supp. 2d 496 (D.N.J. 2009) ...................................................................4, 7

*Smajlaj v. Campbell Soup Co.*,
    782 F. Supp. 2d 84 (D.N.J. 2011) .........................................................................4

*Solo v. Bed Bath & Beyond, Inc.*,
    2007 WL 1237825 (D.N.J. Apr. 26 2007) ............................................................6

*Torres-Hernandez v. CVT Prepaid Solutions*,
    2008 WL 5381227 (D.N.J. Dec. 17, 2008) ...........................................................6


**OTHER AUTHORITIES**

Rule 8(a).............................................................................................................1, 6

Rule 9(b) ............................................................................................................1, 6

Rule 12(b)(6) ..........................................................................................................6

## Preliminary Statement

Church & Dwight's opening Memorandum showed that Plaintiffs have failed adequately to plead any of the elements of their claims.  In their Opposition Memorandum ("Opp. Mem."), Plaintiffs ask this Court to ignore the Complaint's critical deficiencies and allow this case to proceed because it is not possible at this time for them to allege detailed facts supporting their claims.  In essence, Plaintiffs ask this Court to relax the requirements of Rules 8(a) and 9(b) and relieve them of the burden of supporting each element of their claims with specific factual allegations particular to the Plaintiffs.  But the fundamental rules of pleading fraud are well established, and they are dispositive here.  A complaint's allegations must be sufficient to put a defendant on notice of the precise misconduct alleged, and to satisfy the Court that the claims have some plausible basis in fact and law.  The Complaint fails to meet these basic requirements.

Once the Complaint's conclusory allegations about unidentified commercials and a website neither Plaintiff is alleged to have seen are disregarded, as they must be, the essence of Plaintiffs' position is this: two statements on the label of Church & Dwight's Product – the words "Natural Deodorant" and "Natural Protection" – create the misleading impression that the Product is 100% natural.[1]  Plaintiffs' argument relies on those two statements in isolation, despite Plaintiffs' concession (Opp. Mem. 15) that those statements must be read in the context of the entire label to assess whether or not they are misleading.  Disregarding context, Plaintiffs argue that a reasonable consumer would read "natural" to mean "all natural," despite that the Product's label clearly and truthfully identifies what about the Product is natural, namely that its deodorizing ingredients are baking soda and plant extracts, and that it does not contain two synthetically-derived ingredients commonly used in deodorants.  Moreover, the label does not state that the Product is "100% natural" or "all natural," the phrases commonly used in the marketplace (including for deodorants) to indicate that a product has no synthetic ingredients.  Indeed, if Plaintiffs read the label at a store before purchasing the Product, they would have

---

[1] All terms in capital letters herein have the same meaning as in Church & Dwight's initial Memorandum.

noticed that the label explicitly lists several ingredients with chemical names that are not found on the ingredient lists of deodorant products marketed as "all natural", as set forth below at p. 9.

In short, Plaintiffs' pleading failures cannot be cured by the rhetoric or bare conclusions of their Opp. Mem.  Besides failing adequately to plead that the Product label is misleading, the Complaint also does not plead facts supporting an inference that either Plaintiff suffered any losses, or that, before purchase, they relied on any of the allegedly misleading statements, or that Church & Dwight acted with scienter.  Accordingly, the Complaint should be dismissed.

**ARGUMENT**

I.     **Plaintiffs Have Not Stated a Claim under the NJCFA**

     A.     **Plaintiffs Have Failed to Allege an Ascertainable Loss**

Plaintiffs have not alleged facts supporting an inference that they suffered any ascertainable losses under the NJCFA.   Under their "loss in value" theory, Plaintiffs must allege facts sufficient to "quantify the difference in value between the promised product and the actual product received." *Lieberson v. Johnson & Johnson Consumer Cos.*, 2011 WL 4414214, at *8 (D.N.J. Sept. 21, 2011) (Wolfson, J.) (internal quotations omitted).  Plaintiffs claim that they *thought* they were buying an "all natural" or "100% natural" product (even though these words are not on the label), but *received* a deodorant which, although it contained the natural deodorizing ingredients baking soda and plant extracts specified on the label, also contained some artificial ingredients.  But Plaintiffs have not alleged a single fact establishing the value of *either* type of product at the time Plaintiffs purchased the Product, much less any ascertainable difference in value between the two.

To meet the *Lieberson* test, Plaintiffs must both establish the value of the product supposedly promised – an "all natural" or "100% natural" deodorant – and the value of the product they actually received, here a product with natural deodorizing ingredients that does not contain aluminum or parabens, but does contain other artificial ingredients that perform non-deodorizing functions.  But Plaintiffs did not do any of this.  They did not allege the value of all-natural deodorants at the time they purchased the Product, nor did they allege that the price they

2

actually paid for the Product was comparable to the prices charged for "all natural" deodorants. All they alleged was the price charged for the Product in two random stores in March 2012, *two months after Plaintiffs allegedly purchased it*, and even then they failed to compare that irrelevant price with the price of the all natural product they allegedly thought they were getting. In short, Plaintiffs have not alleged facts sufficient to plausibly show that there was any difference in value (much less to quantify it as *Lieberson* requires) between the all natural product they allegedly thought they had purchased and the Product they actually purchased.

Instead, the Complaint pleads an irrelevancy, namely the price of two deodorants (Arm & Hammer® Ultramax® Solid Deodorant and Active Sport) that are neither the type of deodorant Plaintiffs purportedly thought they were buying, nor the type they actually bought.  (Comp. ¶ 38.) According to the Complaint, these two deodorants are "regular" deodorants (*i.e.*, deodorants that do not claim to be natural in *any* way).  *Id.*  But Plaintiffs did not buy a "regular" deodorant; they received a deodorant that, unlike regular deodorants, contains natural odor fighting ingredients and does not contain aluminum or parabens.  These regular deodorants simply are not comparable either to the "all natural" product Plaintiffs allegedly aspired to buy, or the one Plaintiffs bought.  *See Lieberson*, 2011 WL 4414214, at *8 (dismissing complaint for, among other things, failure to allege "the identity or the cost of any allegedly comparable products").[2]

Precise allegations comparing the actual values of "100% natural" products with the value of "natural" deodorants comparable to the Product are critical here, given that (as alleged) the "loss in value" is measured in pennies, and a wide variety of deodorants are sold to

---

[2] The only purportedly "similar" product mentioned in the Complaint is an allegedly "Aluminum Free, Paraben Free" deodorant sold in Trader Joe's in March 2012.  (Comp. ¶ 38.)  Plaintiffs do not specify whether this is a name brand deodorant, nor do they describe any of its ingredients or other characteristics, such as whether it contains plant extracts or baking soda.  Without this information, the Complaint does not provide sufficient facts to plausibly conclude that this deodorant is comparable to the Product, and it thus does not allege the value of the "natural" deodorant Plaintiffs received.

consumers at varied and rapidly-changing prices.[3]  Plaintiffs' claim that this information can be obtained in discovery must be rejected, as it is well-settled that a complaint must state non-conclusory facts plausibly demonstrating each element of a claim *before* the door to discovery is opened.  *Almazan v. 1st 2nd Mort. Co. of N.J.*, 2011 U.S. Dist. LEXIS 71932, at *17-18 (D.N.J. June 2, 2011), *report and recommendation adopted by* 2011 U.S. Dist. LEXIS 71930 (D.N.J. June 30, 2011).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (the pleading rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").[4]

Plaintiffs also argue that they suffered an ascertainable loss because they would not have purchased the Product had they known it was not all natural.  This argument misses the mark.  Unlike in the cases they cite, Plaintiffs do not allege the Product was worthless, or that they received no benefits at all.  *See Nelson v. XACTA 3000 Inc.*, 2010 WL 1931251, at *4 (D.N.J. May 12, 2010) (plaintiff alleged the product purchased was essentially worthless, entitling her to a full refund); *Kalow & Springnut, LLP v. Commerce Corp.*, 2009 WL 44748, at *4 (D.N.J. Jan. 6, 2009) (same).  To the contrary, Plaintiffs expressly rely upon a "loss in value" theory:  that they paid a premium for a Product that did not meet all of their expectations.  (Comp. ¶ 39; Opp.

---

[3] By way of example, on June 29, 2012 at a Duane Reade in midtown Manhattan, one deodorant that was marketed as "all natural" sold for $2.21 per ounce, while another sold for $1.24 per ounce.  *See* Declaration of Arielle Dyner ("Dyner Decl."), ¶¶ 2, 4, 5; Exs. 1, 3, 4.  Other deodorants that purported to be "natural" sold for $2.88 per ounce and $1.99 per ounce.  (Dyner Decl., ¶¶ 6-8; Exs. 5, 6, 7.)  On July 2, 2012 at a Duane Reade in midtown Manhattan, a fourth deodorant that did not claim to be "natural" or "all natural" sold for $1.99 per ounce – more than the $1.52 per ounce charged for the Product in March 2012, according to the Complaint.  (Dyner Decl., ¶¶ 6, 11; Exs. 8, 10.) We point out these products and prices simply to illustrate why it is especially important in this case for Plaintiffs to comply with the requirement that they allege facts particular to them which plausibly demonstrate that they suffered an ascertainable economic loss as a result of the allegedly misleading Product label.

[4] Plaintiffs' reliance on *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 102 (D.N.J. 2011), and similar cases is unavailing.  In those cases, the plaintiffs either alleged facts comparing "the price they paid for the product as it was represented to the price of a product that is the equivalent for Plaintiffs' purposes of the product actually received," or they pled other facts establishing that the product they received was measurably less valuable than the product they were promised.  *See id.* (plaintiffs alleged facts establishing that they paid 20 to 80 cents more for purportedly "low sodium" soup that was identical to cheaper, "regular" soup with the same sodium content); *Ramirez v. STi Prepaid, LLC*, 644 F. Supp. 2d 496, 501 (D.N.J. 2009) (plaintiff alleged facts that, as a result of hidden fees and charges, he received a "fraction of the calling time" promised); *Barton v. RCI, LLC*, 2011 WL 3022238, at *5-6 (D.N.J. July 22, 2011) (plaintiffs alleged that imposition of an annual cap on redemptions in "points" program prevented plaintiffs from redeeming their points for goods and services, making the points measurably less valuable).  Here, Plaintiffs have failed to allege any facts showing that the Product was quantifiably less valuable than an "all natural" or "100% natural" deodorant.  They have merely alleged that the Product was, at one time – but not a relevant time – sold at a premium over other products with materially different characteristics than the Product.

Mem. 17.)  Under that theory, the loss, if any, is the difference between the product expected and the one received, and Plaintiffs have not alleged facts showing that they suffered any such loss.[5]

### B.    Plaintiffs Have Not Alleged Causation

Even had the Complaint identified an ascertainable loss, dismissal still would be warranted because the Complaint also failed to allege facts supporting an inference that such a "loss" was caused Church & Dwight's allegedly unlawful conduct.  As an initial matter, many of the allegations described in the Opposition Memorandum – meager as they are – do not appear in the Complaint and cannot be considered here.  *See Cafaro v. HMC*, 2008 U.S. Dist. LEXIS 71740, at *13 n.3 (D.N.J. Sept. 5, 2008) ("In this Circuit, it is well-settled that a plaintiff may not amend the complaint through statements contained in a brief filed in opposition to a motion to dismiss.").  The entirety of Plaintiffs' causation allegations appear in a single sentence of the 90-paragraph Complaint:  "Reasonably relying on the claims made in the pervasive advertising message disseminated by Defendant through commercials, printed advertisements, as well as on the labeling of the Product, Plaintiffs each viewed the label and purchased Arm & Hammer® Essentials™." (Comp. ¶ 42.)  Plaintiffs cannot supplement these allegations with additional conclusory assertions in their Opposition Memorandum.

The allegations that actually appear in the Complaint do not establish causation.  Plaintiffs identify two general categories of allegedly misleading statements:  (1) a "pervasive advertising message disseminated" by commercials, printed advertisements and a website; and (2) statements on the Product's label.  In the first category, Plaintiffs do not allege they personally ever viewed the website, or relied on it in any way in purchasing the Product.  They similarly fail to identify any specific advertisements or commercials they purportedly saw, when and where they saw them, or what language purportedly misled them.  Thus, any claims based on the website, advertising or commercials must be dismissed.  *See Hammer v. Vital Pharm., Inc.*, 2012 U.S. Dist. LEXIS 40632, at *26 (D.N.J. Mar. 26, 2012) (Wolfson, J.) (dismissing NJCFA

---

[5] Church & Dwight accepts Plaintiffs' damages theory solely for the purpose of this motion, and reserves the right to dispute this theory if the case proceeds.

claim because plaintiff "fails to identify any specific advertisement he viewed, where he viewed it, how he was misled by these advertisements, and how these advertisements caused his injuries"); *Lieberson*, 2011 WL 4414214, at *6 (dismissing NJCFA claim based on advertisements because plaintiff "has not identified when these statements were made or whether and when Plaintiff actually viewed them").

Plaintiffs have similarly failed to allege that they suffered any losses as a result of statements on the Product's label.  The Complaint merely alleges, cryptically, that "Plaintiffs each viewed the label and purchased Arm & Hammer® Essentials™."  (Comp. ¶ 42.)  Plaintiffs do not allege which statements on the label they viewed or relied on in purchasing the product, or even that they reviewed the label in any detail or considered the statements on the label *before* purchasing the Product.  Without these additional factual allegations, it is just as likely Plaintiffs purchased the Product in reliance on label statements not alleged to be false – for example, that the Product does not contain aluminum or parabens, or that it contains baking soda and natural plant extracts – or for some other reason unconnected to the label.  Plaintiffs' sparse allegations thus do not state even a plausible claim for relief under Rule 8(a), much less satisfy Rule 9(b).[6]

The few cases Plaintiffs cite that actually do address the applicable pleading requirements demonstrate precisely why Plaintiffs' claims should be dismissed.  In *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *4 (D.N.J. Apr. 26, 2007), the Court held that the plaintiff's allegations that a product's packaging and advertisements contained a misrepresentation and that he purchased the product did not establish causation.  The Court explained that, in order to state a claim under the NJCFA, the plaintiff would have to allege facts demonstrating that plaintiff

___
[6] Plaintiffs attempt to salvage their claim by citing to a few cases that supposedly permit a "rebuttable presumption" of causation for claims based on misleading labels or packaging.  These cases (all of which were decided at the class certification stage, not on a Rule 12(b)(6) motion) do not help Plaintiffs.  For example, in *Lee v. Carter-Reed Co.*, 4 A.3d 561 (N.J. 2010), unlike here, plaintiffs alleged that the product at issue did not offer *any* of the advertised benefits.  And in *Mann v. TD Bank, N.A.,* 2010 WL 4226526 (D.N.J. Oct. 20, 2010), the injury alleged – a "dormancy fee" charged against gift cards – was directly connected to the alleged omission – the failure to disclose that a dormancy fee would be charged if the recipient did not use the card within a period of time.  Here, there is no such connection.  Plaintiffs could well have purchased or paid the alleged "premium" for the Product for any number of reasons, and they have failed to plead facts specifying those reasons.

purchased the product "*because of*" the alleged misrepresentation, or that he would not have purchased it if he had not seen the specific misrepresentation at issue.  *Id.* at 4 (emphasis added).[7]
Plaintiffs' allegations here are virtually identical to the allegations found wanting in *Solo*, and they should meet the same fate.

### C.   The Complaint Fails to Allege Scienter

Plaintiffs appear to have conceded they have not pled facts supporting an inference of scienter.  Plaintiffs instead argue that they do not have to, because the Complaint alleges "affirmative acts of fraud," for which there is no scienter requirement.  (Opp. Mem. 12-13.) Plaintiffs' efforts to re-cast their claims are unavailing.  The Complaint does not identify any affirmative, false statements by Church & Dwight.  It does not allege that the Product was ever marketed as "all natural" or "100% natural," or that Church & Dwight ever stated that the Product *only* contained natural ingredients.  Rather, the Product was marketed as a "Natural Deodorant" that provided "Natural Protection."  Plaintiffs contend that these statements were misleading because they used the word "natural" "without any qualification" (*id*. at 3), and because a reasonable consumer allegedly would not have the expertise to identify as artificial the synthetic ingredients listed on the label.  (Comp. ¶ 6.)  Properly construed, then, the essence of the Complaint is that Church & Dwight failed adequately to explain that the non-deodorizing ingredients listed on the Product's label were artificial.  Thus, the Complaint here only alleges falsity by omission.  *See Henderson v. Volvo Cars of N.A., LLC*, 2010 WL 2925913, at *8 (D.N.J. July 21, 2010) (allegations that manufacturer failed to disclose known defects in vehicle

---

[7] The other cases Plaintiffs cite allowed claims to proceed because they were based on specific allegations about the plaintiffs' experiences, unlike the Complaint here.  *See Torres-Hernandez v. CVT Prepaid Solutions*, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008) (plaintiffs could allege causation if they alleged the disclosures they viewed, how they were misleading and that they would not have purchased the product if those disclosures had been accurate); *Barton*, 2011 WL 3022238, at *6 (plaintiffs alleged that they had entered into a program in reliance on specific representations about how the program would work and would not have joined the program if additional information had been disclosed); *Nelson*, 2010 WL 1931251, at *7 (plaintiffs alleged that they purchased the product in reliance on specific misrepresentations and the time and place they viewed these misrepresentations); *Mason v. Coca-Cola Co.*, 2010 WL 2674445, at *7 (D.N.J. June 30, 2010) (allegations that plaintiff was "persuaded" to purchase the product "because of" specific misrepresentations satisfied causation requirements).

described omissions, not misstatements).[8]  Under the NJCFA, scienter is a necessary element of an omission claim, and Plaintiffs have failed to allege it.

### D.   Plaintiffs Have Not Alleged Unlawful Conduct Under the NJCFA

Plaintiffs also failed adequately to allege that Church & Dwight engaged in unlawful conduct, another necessary element of their NJCFA claim.  Plaintiffs agree that the allegedly misleading materials at issue here must be viewed in context to ascertain whether a reasonable consumer could find them misleading.  (Opp. Mem. 15.)  Despite conceding this point, Plaintiffs contravene it by extracting isolated statements about the Product from its label – specifically, that the Product is a "Natural Deodorant" and provides "Natural Protection" – and conclusorily asserting that a reasonable consumer would understand these statements to mean that the Product "does not include un-natural, artificial and synthetic ingredients."  *Id*. at 14.

When these statements are viewed in the full context of the Product label, it is clear no reasonable consumer could be misled about the contents of the Product.  Nothing on the label states that the Product is "all natural" or "100% natural"– phrases that are typically used in the marketplace generally, and in the deodorant category specifically to identify products that do not contain any artificial ingredients.  (*See* Dyner Decl. Exs. 3, 4.)  The label states that the Product provides "Natural Deodorant" and "Natural Protection."  It clearly specifies, on both the front and back, what is natural about the product:  the Product is "Aluminum free" and "Paraben free," and thus does not contain two synthetic ingredients commonly found in deodorants and anti-perspirants, and it "[c]ontains Arm & Hammer Baking Soda and natural plant extracts to absorb and fight odor."  The website similarly explains that the Product is natural because it "does not contain aluminum, parabens, colorants or animal-derived ingredients."

Moreover, the Product label also lists all of the Product's contents, including the four ingredients Plaintiffs allege are not natural:  dipropylene glycol, propylene glycol, triclosan and

---

[8] Plaintiffs cite no support for their arguments, except for one inapt case, *Nelson*, 2010 WL 1931251, at *6, in which the manufacturer made false statements about the efficacy of the product at issue, and another irrelevant case, *Ramirez v. STi Prepaid, LLC*, 644 F. Supp. 2d 496 (D.N.J. 2009), which does not address the distinction between misstatements and omissions under the NJCFA.

tetrasodium EDTA.  The Complaint does not allege that before purchasing the Product, Plaintiffs read those ingredients on the label and mistakenly believed them to be natural.  But if, as Plaintiffs maintain, they were specifically looking for an "all natural" product, the label's disclosure of these four chemicals should, at a minimum, have caused them to compare the Product label with those of deodorants marketed as "all natural".  (Dyner Decl. Exs. 3-4.)

Plaintiffs' attempt to distinguish the Third Circuit's holding in *Pernod Ricard USA, LLC v. Bacardi USA, Inc.*, 653 F.3d 241 (3d Cir. 2011), is unconvincing.  In *Pernod,* the Court of Appeals held that the allegedly misleading statement – the name of the product, "Havana Club Rum" – was not misleading when viewed in full context because the label also stated that the product was a "Puerto Rican Rum" that was "distilled and crafted in Puerto Rico."  *Id.* at 252-53.  As Plaintiffs acknowledge, this disclosure was "a clear statement that this was a brand of rum made in Puerto Rico", ensuring that the label as a whole could not mislead reasonable consumers.  (Opp. Mem. 15 n.6.)  Similarly, here, the Product's label as a whole could not mislead reasonable consumers:  it does not state that the Product is "all natural", "100% natural" or "contains no artificial ingredients."  It clearly identifies the deodorizing ingredients that are natural (baking soda and plant extracts); it expressly identifies two common synthetic ingredients in deodorants that are not present in the Product; and it lists several chemicals in the product that are not natural.

Moreover, in the following respect, this is an easier case than *Pernod*.  Any prospective purchaser of the Product at issue here who was unfamiliar with any of the ingredients listed on the Product label could readily compare those ingredients with the ingredients in the other deodorants on the same store shelf, including deodorants that claim to be "all natural" and deodorants that make no "natural" claims of any sort.  For example, the ingredients in one brand of "all natural" deodorant are:  "purified water (aqua), natural mineral salt (potassium alum), cellulose."  (Dyner Decl. Ex. 3.)  That deodorant contains none of the synthetic ingredients identified on the label of Church & Dwight's Product.  By contrast, certain of the Product's

synthetic ingredients *are present* in deodorants that are not marketed as natural in any respect. (Dyner Decl. Exs. 9, 10.)[9]

In short, it is simply not reasonable for any prospective purchaser of the Product to assume that the mere reference to "natural" on the Product label means that the deodorant is 100% natural, especially where the Product label:  (a) specifies the ways in which the Product is natural, (b) unlike certain other deodorant products, contains no reference to the Product being "all natural", "100% natural" or having "no artificial ingredients", and (c) identifies each ingredient by name, thus facilitating an easy ingredient comparison with other adjacent deodorant products by any still-unsure prospective purchaser.  As in *Pernod*, this is a case "in which a court can properly say that no reasonable person could be misled by the advertisement in question."  *Pernod*, 653 F.3d at 252.[10]

## II.     Plaintiffs Have Not Stated a Claim for Breach of Implied Warranty

Plaintiffs do not allege the Product was unfit for use as an underarm deodorant.  They also concede that their allegations that triclosan may be unsafe are irrelevant to their claims in this case. (Opp. Mem. 37.)  Nevertheless, Plaintiffs persist in their effort to fit "the square peg of a false advertising or consumer fraud type claim into the round hole of an entirely unrelated warranty claim." *Lieberson*, 2011 WL 4414214, at *10.  They cannot do so.  Plaintiffs first argue that the Product was "unfit for its ordinary purpose as a natural deodorant."  (Opp. Mem. 25.)  This contention misstates the Product's purpose.  As this Court twice recently explained, a breach of implied warranty claim must be supported with allegations that a product was not fit for the "*general* purpose for which it is manufactured and sold."  *Lieberson*, 2011 WL 4414214,

---

[9] Again, we reference these other deodorant products to illustrate the need, and Plaintiffs' failure, to specify when they read the Product label in relation to their purchase, and what it was about the label that caused them to believe the Product consisted of only natural ingredients.  Without that information, Church & Dwight respectfully submits that this Court cannot conclude that the Complaint contains a plausible basis to conclude that either of the Plaintiffs reasonably relied on any false statement on the Product label.

[10] Plaintiffs argue that these cases are irrelevant because they were decided under the Lanham Act.  This distinction misses the mark.  The relevant question in those cases, as in this one, was whether reasonable consumers could be misled by the advertisement at issue.  Plaintiffs also cite two inapposite cases (Opp. Mem. 15-16), in which courts allowed claims to proceed based on allegations that were exactly the reverse of the circumstances alleged here.

at *9 (emphasis in original); *Hammer*, 2012 U.S. Dist. LEXIS 40632, at *36.   Here, the Product is a deodorant, the general purpose of which is to eliminate or mask odor.  Plaintiffs cannot transform that purpose by arguing that the Product was marketed as a "natural" deodorant.  If they could, almost any false advertising claim would also give rise to a breach of implied warranty claim, contrary to this Court's teaching in *Lieberson.  Henderson*, 2010 WL 2925913, at *9-10, cited by Plaintiffs, is readily distinguishable.  There, the product at issue was an automobile, and it was unfit for its ordinary purpose – transportation – because of a transmission defect that rendered it undriveable.  In contrast, the Complaint in this case does not allege that the Product fails to deodorize.

Plaintiffs also argue that the Product failed to "conform to the promises or affirmations of fact made on the label" under the New Jersey and Missouri statutes.  This Court has rejected the identical argument, explaining that allegations that a product "did not comport with advertising on the label" do not state a claim for breach of the implied warranty of merchantability. *Lieberson*, 2011 WL 4414214, at *10 (distinguishing *Nelson*, 2010 WL 1931251 at * 8-9). Accordingly, Plaintiffs have failed to state a claim for breach of implied warranty.

## III.   Plaintiffs Concede that Allegations About the Safety of Triclosan are Irrelevant

Church & Dwight does not ask the Court to strike allegations that triclosan is not *natural*, only the allegations that triclosan is not *safe*.  Plaintiffs admit their allegations about the safety of triclosan have nothing to do with their claims in this case.  In Plaintiffs' words:  "[t]his lawsuit requires determination of whether the Product is *as natural* as Defendant's marketing claims it to be, ***not*** whether all triclosan-containing deodorants are safe and effective *at all*."  (Opp. Mem. 37 (emphasis in original).)  Plaintiffs merely conceded the obvious:  allegations that an ingredient is unsafe have nothing to do with whether or not it is natural.  Because these irrelevant allegations "will not have any possible bearing on the outcome" of this case, and will serve only to prejudice Church & Dwight and confuse the jury, the Court should strike Plaintiffs' allegations about the safety of triclosan, found in ¶¶ 3, 18, 25-35 and 65 of the Complaint.  *See FTC v. Hope Now Modifications, LLC*, 2011 U.S. Dist. LEXIS 24657, at *4 (D.N.J. Mar. 10, 2011).

11

**IV.     If the Safety of Triclosan Is at Issue, the Doctrine of Primary Jurisdiction Applies**

Finally, Plaintiffs' primary jurisdiction arguments misconstrue Church & Dwight's position.  Church & Dwight did not argue that Plaintiffs' claims should be dismissed in their entirety on the grounds of primary jurisdiction.  Rather, as set forth in Church & Dwight's opening Memorandum, Plaintiffs' irrelevant allegations about the *safety* of triclosan should not be litigated in this court because:  (1) *that* issue is squarely within the expertise of the FDA; (2) the FDA is empowered to make determinations on triclosan's safety; (3) litigating this issue here would create a risk of inconsistent determinations about the safety of a consumer product; and (4) the FDA is already considering the issue.  Plaintiffs have no answer for these points.

Dated: July 2, 2012

Respectfully submitted,

/s/ Wanda L. Ellert
Wanda L. Ellert
**Proskauer Rose LLP**
One Newark Center
Newark, NJ 07102
Tel: (973) 274-3285
Fax: (973) 274-3299
wellert@proskauer.com


Richard M. Goldstein *
Lawrence I. Weinstein *
Baldassare Vinti *
**Proskauer Rose LLP**
11 Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
* Admitted *Pro Hac Vice*

*Attorneys for Defendant*
*Church & Dwight Co., Inc.*

12